IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WHITE FAMILY HARMONY INVESTMENT, LTD., <br><br>            **Plaintiff,** <br><br> vs. <br><br> TRANSWESTERN WEST VALLEY, LLC, TRANSWESTERN METRO BUSINESS PARK, LLC, BUSINESS PROPERTIES, LLC, INVESTORS BANK AND TRUST COMPANY, as trustee for the TEXTRON COLLECTIVE INVESTMENT TRUST AND JOHN DOES 1-999, <br><br>            **Defendants.** | **MEMORANDUM DECISION AND ORDER** <br><br> **Case No.  2:05CV495 DAK** |

This matter is before the court on (1) Defendant Transwestern Metro Business Park, LLC's ("Transwestern Metro") motion to dismiss for failure to state a claim, (2) Plaintiff White Family Harmony Investment, Ltd.'s ("Harmony") alternative motion to conduct discovery under Rule 56(f) of the Federal Rules of Civil Procedure, (3) Defendant Investors Bank and Trust Company's ("IBT")  and (4) Defendant Business Properties, LLC's ("Business Properties") motions to dismiss for lack of personal jurisdiction.  A hearing on all motions was held on October 11, 2005.  At the hearing, Defendants Transwestern Metro and Business Properties were represented by James K. Tracy, Defendant IBT was represented by Jonathan A. Dibble, and

Plaintiff Harmony was represented by Craig A. Hoggan.  Before the hearing, the court carefully

considered the memoranda and other materials submitted by the parties.  Since taking the

motions under advisement, the court has further considered the law and facts relating to the

motions.  Now being fully advised, the court enters the following Memorandum Decision and

Order.

## BACKGROUND[1]

Harmony is a Utah Limited Partnership doing business in Utah and is the owner of real

property located in Salt Lake City.  The property is part of a business park commonly referred to

as the Metro Business Park.  The Metro Business Park consists of fifteen office buildings located

on approximately thirty acres.  Harmony owns three of the fifteen buildings ("the Harmony

Property").

In November 2003, Harmony acquired the Harmony Property from Joseph R. White and

Vera M. White ("the Whites").  In 1982, the Whites entered into a ground lease agreement ("the

Ground Lease") with Alliance Enterprises, Inc. and F.C. Stangl (collectively "Alliance").

Section 21 of the Ground Lease provided Alliance

> the right . . . to sublet all or a portion of the [Harmony Property] or to assign
> Lessee's interest under this lease, either in whole or in part, without the prior
> written approval of Lessor; but no such subletting shall release Lessee from any of
> the obligations under the terms of this Lease, and the Lessor shall, at all times,
> have the right to look to the Lessee for the performance of all the covenants to be
> performed on the part of the Lessee.

---

[1]The court treats the allegations in Harmony's complaint as true for purposes of these
motions.

In 1988, Alliance assigned its interest in the Ground Lease to the Textron Collective

Investments Trust ("the Textron Trust"), with Rhode Island Hospital Trust National Bank

("Rhode Island Bank") as trustee.  Sometime between 1997 and 1999 Rhode Island Bank was

acquired by Bank of Boston.  In 1999, Defendant IBT, a Massachusetts trust, purchased a portion

of Bank of Boston's business including that portion dealing with the Textron Trust.  Later in that

same year, IBT liquidated and distributed all of the assets of the Textron Trust.

On December 10, 1997, the Textron Trust assigned its interest in the Ground Lease ("the

Textron Assignment") to Transwestern West Valley, LLC ("TWV"), which is under common

ownership with Business Properties, both Delaware limited liability companies.  Around the

same time TWV and the Textron Trust executed the Textron Assignment, another Transwestern

entity, Transwestern Metro, also a Delaware limited liability company, purchased the other

twelve buildings within the Metro Business Park.  The realtor for Business Properties sent the

Whites a "Form of Certificate from Lessor under a Ground Lease" asking them to acknowledge

"that Rhode Island Hospital Trust National Bank as Trustee for the Textron Collective

Investment Trust ("Ground Lessee") has entered into an agreement with Business Properties,

L.L.C. ("Purchaser") for the sale and purchase of the buildings commonly known as Metro

Business Park."  Business Properties purchased an ALTA owner's policy of title insurance from

First American Title Insurance Company for the entire Metro Business Park, including the

Harmony Property on December 10, 1997.  The named insured on the policy was Business

Properties.

Also in December 1997, Business Properties began making lease payments under the

Ground Lease and the checking account on which the payments were drawn bore the caption "Business Properties, L.L.C. Transwestern West Valley." Business Properties provided the Whites, and then Harmony, with yearly tax statements identifying Business Properties as the payer with no reference to TWV. Also, Utah Power listed both Business Properties and TWV on the power bill. And the property manager for the Metro Business Park, Transwestern Commercial Services, identified Business Properties as the owner of the leasehold interest in Harmony's Property on its June 2004 Quarterly Report.

In December 2001, Transwestern Metro and TWV jointly borrowed $13,000,000 from Comerica Bank-Texas and secured the loan with all of the property within the Metro Business Park, including TWV's leasehold interest in the Harmony Property. On December 12, 2001, the Whites executed a Ground Lessor Estoppel Certificate ("Estoppel Certificate") in which they acknowledge that TWV "has entered into an agreement with Comerica Bank-Texas ("Lender") for the refinancing of the buildings commonly known as Metro Business Park."

Since May 2001, the revenues of TWV's property have been insufficient to pay real estate taxes, operating expenses, and rent due under the Ground Lease. To cover TWV's expenses, Business Properties made capital contributions to TWV totaling in excess of $250,000. In 2004, Business Properties ceased contributing additional capital to TWV.

Despite the fact that Transwestern Metro is not a named party to the Textron Assignment, it, rather than TWV, leased the Harmony Property to subtenants. In support of this, Harmony provided copies of six subleases for the Harmony Property executed by Transwestern Metro. Transwestern Metro, however, asserts that due to a scrivener's error, it was inadvertently listed as

the landlord on the subleases rather than TWV but that it remedied the error in April of 2004 when it assigned those subleases to TWV by a quitclaim assignment of lease ("Quitclaim Assignment").  The signatory to the Quitclaim Assignment for both Transwestern Metro and TWV was Joseph P. Concepcion, Vice President for both companies.

Beginning in July 2004, TWV and the Textron Trust ceased making their monthly rental payments but continued to collect monthly rent, taxes, and common area maintenance fees from its subtenants through October 2004.  They owe past due rent since July 2004, and they have failed to pay the 2004 taxes on the Harmony Property.

TWV, Transwestern Metro, and Business Properties ("the Transwestern Entities") allowed Chrysalis Group Management LLC ("Chrysalis") to take physical possession and control of one of the Harmony Property buildings ("Building C") without a lease agreement and allowed Chrysalis to remain in Building C for eight months without paying any rent.  While in possession of Building C, Chrysalis caused $100,000 in damage and refused to surrender possession.  Also, the Transwestern Entities transferred possession of the Harmony Property to Harmony in October 2004 at which time Harmony evicted Chrysalis.

In May of 2005, Harmony filed an Amended Complaint in Third District Court for the State of Utah against Defendants TWV, Transwestern Metro, Business Properties, IBT, and the Textron Trust.  Harmony alleges that the Textron Trust and TWV breached the Ground Lease by failing to pay rent, fees, and taxes, and by allowing Chrysalis to take possession and cause damage to Building C.  Harmony further claims that because there is a unity of interest and ownership of the Transwestern Entities and because TWV does not have the financial ability to

meet its obligations, allowing Transwestern Metro and Business Properties to use the corporate

form to avoid TWV's obligations to Harmony would sanction a fraud, promote injustice, or

allow an inequitable result.

On June 1, 2005, Transwestern Metro filed a motion to dismiss Harmony's Amended

Complaint in state court on the grounds that Harmony has not plead the required elements of an

alter ego claim.  On June 13, 2005, IBT filed a notice of removal under 28 U.S.C. § 1441 in

which Business Properties joined.  At the time the notice of removal and joinder were filed, both

IBT and Business Properties filed separate motions to dismiss for lack of personal jurisdiction.

**STANDARD OF REVIEW**

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court

must determine whether the factual allegations in the complaint, if true, would entitle the plaintiff

to a legal remedy.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Dismissal is appropriate

only when "the plaintiff can prove no set of facts in support of his claims to entitle him to relief."

*Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999); *Seamons v. Snow,* 84

F.3d 1226, 1231 (10th Cir.1996).  "The court's function on a Rule 12(b)(6) motion is not to

weigh potential evidence that the parties might present at trial, but to assess whether the

plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."

*Sutton v. Utah Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller

v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991)).  The court must accept all well-pleaded facts as

true, construe those facts liberally in a light most favorable to the plaintiff, and "resolve all

reasonable inferences in plaintiff's favor."  *Seamons*, 84 F.3d at 1232.  However, conclusory

allegations without supporting factual averments need not be accepted.  *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 510 (10th Cir. 1998); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Additionally, the standard of review for a motion to dismiss for lack of personal jurisdiction is well established.  "When a court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists."  *Electronic Realty Assoc. v. Vaughan*, 897 F. Supp. 521, 521 (D. Kansas 1995) (citing *McNutt v. General Motors*, 298 U.S. 178, 189 (1936)).  However, in the preliminary stages of litigation, the plaintiff's burden is light.  *Vaughan,* 897 F. Supp. at 521.  "Where . . . there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists."  *Id*.; *see also Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1995).  All factual disputes are resolved in favor of the plaintiff when determining the sufficiency of this showing.  *Wenz v. Memory Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

## DISCUSSION

### I. Transwestern Metro's Motion to Dismiss

Transwestern Metro argues that Harmony has failed to allege facts sufficient to support an alter ego claim against it.  The Utah Supreme Court has held that

> [I]n order to disregard the corporate entity, there must be a concurrence of two circumstances: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an

7

inequitable result would follow.

*Messick v. PHD Trucking Service, Inc.*, 678 P.2d 791, 794 (Utah 1984) (alteration in original) (quotations and citations omitted).   The first prong has been referred to as the "formalities requirement" and is established upon a showing that the corporation failed to observe corporate formalities required by statute.  *Id.*  The second prong has been referred to as the "fairness requirement."  *Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 47 (Utah Ct. App. 1988).  This prong "is addressed to the conscience of the court" as it is an "equitable doctrine requiring that each case be determined upon its peculiar facts."  *Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 47 (Utah Ct. App. 1988) (quotations and citations omitted).  Under the second prong, "it must be shown that the corporation itself played a role in the inequitable conduct at issue."  *Transamerica Cash Reserve, Inc. v. Dixie Power and Water, Inc.*, 789 P.2d 24, 26 (Utah 1990).

Transwestern Metro filed its motion to dismiss on the grounds that Harmony has not met either prong of the alter ego test.  First, Transwestern Metro asserts that Harmony did not allege that Transwestern Metro failed to observe corporate formalities.  Second, Transwestern Metro contends that Harmony's claim of inequity is based solely on the probability that it may not be able to collect a judgment against TWV, which the Utah Supreme Court has held is not enough to satisfy the second prong.  *See id.* at 27 ("The inequity contemplated by the second requirement of the alter ego test is not present just because the existence of the corporate form is inconvenient for a creditor seeking to pursue the shareholder's assets; it is not enough for the creditor to complain that it must proceed against the shareholder's assets, including the stock in the

corporation, rather than simply levying on the corporations assets.").

Harmony contends that it has alleged facts sufficient to support its alter ego claim against Transwestern Metro, thus defeating Transwestern Metro's motion to dismiss. The court agrees with Harmony. Harmony alleges that (1) the Transwestern Entities have "a unity of interest and ownership . . . such that the separate personalities of [TWV], Transwestern Metro, and Business Properties no longer exist;" (2) TWV has breached its obligations under the Lease Agreement by not paying rent and taxes, and by allowing Chrysalis to remain in Building C without paying rent and causing damage to Building C; and (3) permitting the Transwestern Entities to use the corporate form to avoid the obligations to Harmony would sanction a fraud, promote injustice, or lead to an inequitable result. *See Messick v. PHD Trucking Service, Inc.*, 678 P.2d 791, 794 (Utah 1984) (quotations and citations omitted). Harmony further maintains that while not a party to the Ground Lease or the Textron Assignment, Transwestern Metro–and not TWV–leased the Harmony Property to subtenants until April 2004 when it assigned the subleases to TWV through the Quitclaim Lease.

The court finds that the foregoing is sufficient to state a claim under an alter ego theory. Harmony is not required to *prove* its alter ego claim in order to defeat a motion to dismiss or to set forth detailed factual allegations supporting its alter ego theory. Harmony's complaint must merely offer "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47 (citations omitted). Harmony has done so. Thus, at this stage of the litigation, the court cannot say that Harmony can prove no set of facts that would entitle it to relief. Accordingly, the court

denies Transwestern Metro's motion to dismiss for failure to state a claim.[2]

## II.  Personal Jurisdiction

IBT and Business Properties both assert that Harmony has failed to establish that this

court has personal jurisdiction over them.  "To obtain personal jurisdiction over a nonresident

defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws

of the forum state and that the exercise of jurisdiction does not offend the due process clause of

the Fourteenth Amendment."  *Soma Medical*, 196 F.3d at 1295 (internal quotations omitted).

There are two types of jurisdiction a court may exercise over a nonresident defendant–general or

specific.  Because Harmony does not contend that this court has general personal jurisdiction

over either IBT or Business Properties, the court will address specific personal jurisdiction only.

## A.  Specific Jurisdiction

The Utah Supreme Court has stated that "specific personal jurisdiction gives a court

power over a defendant only with respect to claims arising out of the particular activities of the

defendant in the forum state.  For such jurisdiction to exist, the defendant must have certain

minimum local contacts."  *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122

(Utah 1992).  Until recently, the Utah Supreme Court employed a three-part inquiry into personal

jurisdiction.  *See, e.g., Phone Directories Co. v. Henderson*, 8 P.3d 256 (Utah 2000).  The court

has now clarified that

[t]he proper test to be applied in determining whether personal jurisdiction exists

---

[2]Because the court denies Transwestern Metro's motion to dismiss, Harmony's Rule 56(f) motion is moot.

over a nonresident defendant involves two considerations.  First, the court must
assess whether *Utah law* confers personal jurisdiction over the nonresident
defendant.  This means that a court may rely on *any* Utah statute affording it
personal jurisdiction, not just Utah's long-arm statute.  Second, assuming Utah
law confers personal jurisdiction over the nonresident defendant, the court must
assess whether an assertion of jurisdiction comports with the due process
requirements of the Fourteenth Amendment.

*State ex rel. W.A.*, 63 P.3d 607, 612 (Utah 2002).  "This test is merely a refinement of [the Utah

Supreme Court's] previous tests governing the assertion of personal jurisdiction.  It recognizes

that the legislature may provide for the extension of personal jurisdiction in statutes other than

the long-arm statute."  *Id.*  The court explained that "[u]nder this new test, however, any

legislative enactment of personal jurisdiction, in or out of the long-arm statute, cannot justify on

its own the assertion of jurisdiction.  The true safeguard on the extension of personal jurisdiction

is the constitutional due process analysis, with its focus on minimum contacts and on traditional

notions of fair play and substantial justice."  *Id.*  In this case, Harmony relies only on the long-

arm statute as a statutory basis for jurisdiction.  Utah's long-arm statute provides:

> Any person . . . who in person or through an agent does any of the following
> enumerated acts, submits himself . . .  to the jurisdiction of the courts of this state
> as to any claim arising out of or related to:
> (1) the transaction of any business within this state;
> (2) contracting to supply services or goods in this state;
> (3) the causing of any injury within this state whether tortious or by breach of warranty;
> (4) the ownership, use, or possession of any real estate situated in this state . . . .

Utah Code Ann. § 78-27-24.  The statute broadly defines "transaction of business" to mean

"activities of a non-resident . . . in this state which affects persons or business within the State of

Utah."  *Id.* § 78-27-23(2).  The long-arm statute states that it is intended to be interpreted broadly

"so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due

process clause of the Fourteenth Amendment to the United States Constitution." *Id.* § 78-27-22; *see also Starways, Inc. v. Curry*, 980 P.2d 204, 206 (Utah 1999).

Consistent with the long-arm statute's command to apply it as broadly as permitted by due process, the Utah Supreme Court "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute." *SII MegaDiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998).  Under due process standards, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (citations omitted).  The "minimum contacts" necessary for specific personal jurisdiction are established "'if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  If the defendant's activities create sufficient minimum contacts, the court then considers "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)).

**(1)  IBT's Motion to Dismiss**

IBT argues that it has insufficient contacts with the State of Utah to subject it to personal jurisdiction.  Specifically, IBT asserts that there is no nexus between any IBT contact with Utah and IBT's alleged conduct with the Textron Trust.  IBT was involved with the Textron Trust only

after Rhode Island Bank, as trustee for the Textron Trust, assigned the Textron Trust's interest in the Lease Agreement to TWV.  And because IBT's involvement with the Textron Trust for a few months in 1999 occurred in Massachusetts, IBT contends that there are insufficient contacts between IBT and the State of Utah to satisfy due process.  Harmony, however, argues that because IBT's predecessor in interest, Rhode Island Bank, has significant contacts in Utah by virtue of its status as trustee for the Textron Trust, those contacts may be imputed to IBT.

The court agrees that IBT cannot be subject to personal jurisdiction simply because it formerly acted as a trustee for the Textron Trust.  The Textron Trust assigned its interest in the Ground Lease to TWV though the Textron Assignment long before IBT became the trustee of the Textron Trust in 1999.  Moreover, IBT cannot be held liable in relation to the Ground Lease or the Textron Assignment because under Utah Code Ann. § 75-7-1010(2), "[a] trustee is personally liable . . . for obligations arising from ownership or control of trust property . . . only if the trustee is personally at fault."  Because IBT has essentially no contact with the State of Utah, the court finds that it does not have personal jurisdiction over IBT.  Accordingly, IBT's motion to dismiss is granted.

**(2)  Business Properties' Motion to Dismiss**

Business Properties also asserts that it has insufficient contacts with the State of Utah to subject it to jurisdiction here.  Harmony contends that regardless of whether or not Business Properties itself has sufficient contacts with the State of Utah, TWV's forum contacts are imputed to Business Properties though its alter ego claim.  Specifically, Harmony alleges that TWV is a Utah limited liability company formed solely to hold and manage a leasehold interest

in the Harmony Property and that TWV is merely an underfunded alter ego of Business

Properties.  Harmony further asserts that in these types of situations, courts consistently impute

an alter ego subsidiary's contacts to the parent corporation.  *See, e.g.*, *Lakota Girl Scout Council,*

*Inc. v. Havey Fund-Raising Mgmt, Inc.*, 519 F. 2d 634, 637 (8th Cir. 1975) ("Long-arm

derivative jurisdiction over a foreign parent corporation has been found where the parent so

controlled and dominated the activities of its resident subsidiary that the latter's separate

corporate existence was in effect disregarded.").  The court agrees with Harmony.  It is the

general rule, however, that "[m]ere corporate status can never be the basis of jurisdiction; '[e]ach

defendant's contacts with the forum State must be assessed individually,'" *MFS Series Trust III*

*v. Grainger*, 2004 UT 61, ¶11, 96 P.3d 927 (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984))

(second alteration in original).  But in situations where "one defendant completely controls

another, the latter's contacts with the forum may fairly be imputed or attributed to the former."

*Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1021 (10th Cir. 1990); *see also*

*Lakota Girl Scout Council*, 519 F.2d at 637.

Here there is no question that TWV has sufficient contacts with Utah to subject it to

personal jurisdiction.  And there is significant evidence that TWV is the alter ego of Business

Properties.  For instance, (1) Business Properties is the sole member of TWV; (2) Business

Properties purchased an ALTA owner's policy of title insurance for the entire Metro Business

Park, including the Harmony Property; (3) Business Properties made capital contributions to

TWV totaling in excessof $250,000; (4)  Business Properties made lease payments to the Whites

and later to Harmony on a checking account bearing the caption " Business Properties, L.L.C.

Transwestern West Valley;" (5) Business Properties provided yearly tax statements that identified it as the payer with no reference to TWV; (6) both Business Properties and TWV were listed on statements from Utah Power; and (7) the property manager identified Business Properties, rather than TWV, as the owner of the leasehold interest in the Harmony Property on its June 2004 Quarterly Report.  Therefore, the court finds that while Business Properties likely has sufficient contacts itself to subject it to specific personal jurisdiction in Utah, TWV's contacts may also be imputed to Business Properties.  Accordingly, Business Properties' motion to dismiss for lack of personal jurisdiction is denied.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant Transwestern Metro's Motion to Dismiss for failure to state a claim (originally filed in state court) is DENIED, Defendant Business Properties' Motion to Dismiss for lack of personal jurisdiction (Docket #13) is DENIED, and Defendant Investors Bank and Trust's Motion to Dismiss for lack of personal jurisdiction (Docket #8) is GRANTED.  Plaintiff Harmony's Alternative Rule 56(f) Motion (Docket #5) is MOOT.

DATED this 31st day of October, 2005.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

15